# Exhibit 1

**COOPERATIVE AGREEMENT APPLICATION**
U.S. DEPARTMENT OF THE INTERIOR
OFFICE OF HISTORICAL TRUST ACCOUNTING
AND THE
INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

1. **ADMINISTRATIVE DETAIL**

A. APPROVAL. Transmitted for approval to the U.S. Department of the Interior ("DOI"), Office of Historical Trust Accounting ("OHTA), to obtain funds from DOI/OHTA by the Board of Directors of the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") under the foregoing Cooperative Agreement.

B. ADMINISTRATIVE INFORMATION

1. Duration: From the effective date hereof, through September 30, 2005, and is subject to the availability of funds.

2. Department: DO1

3. Program: OHTA

4. Program Manager: OHTA

5. Financial Assistance Officer: National Business Center, Denver

6. Recipient: ITMA

**II. STATEMENT OF WORK AND SUPPORTING DOCUMENTATION**

A. AUTHORITY, PURPOSE, AND SCOPE

1. The authority for this Cooperative Agreement includes 25 U.S.C. §§ 4025, 4045 and 4061, Department of the lnterior and Related Agencies Appropriations Act, 2004, P.L. 108-108, Title 1, Continuing Appropriations for Fiscal Year 2005, Pub. L. No. 108- 309 (H.J. Res. 107), as amended and extended by H.J. Res. 114 on Nov. 20, 2004, and Secretarial Order 3231, Amendment No. 3, June 28, 2004. The purpose of this Cooperative Agreement is to provide funding to begin a project ("Project") which will aid DOl/OHTA and each Tribe participating in the Project ("Participating Tribes") to reach agreement about the balances of Tribal Trust Fund accounts of each of those Tribes. DOI/OHTA, ITMA, and the Participating Tribes specifically acknowledge and affirm that no Tribe that participates in any phase of the Project is required, in any manner, to reach agreement with DOI/OHTA about the balance of that Tribe's trust fund account(s) or to settle with DOI/OHTA any claims that

the Tribe may have regarding its Tribal Trust Fund account(s).

a. This Project will consist of two phases. This Cooperative Agreement covers Phase One, but each of the two phases are described herein. Those Tribes that participate in the first phase are called "Phase One Participating Tribes," and those that participate in the second phase are called "Phase Two Participating Tribes."

b. The purpose of Phase One of the Project is to develop a methodology that will allow the Phase Two Participating Tribes to reconcile, as accurately as possible, Tribal Trust Fund accounts for the period July **I, 1972** through September **30, 1992** (**"1972-92** Period"). To develop that methodology, ITMA, the Phase One Participating Tribes, and DOI/OHTA, will examine the Tribal Trust Fund account reconciliation project that was conducted by DO1 and its contractor Arthur Andersen LLP for the **1972-92** Period ("Tribal Reconciliation Project" or "TRP"). Phase One will consist of a review and analysis of the Tribal Trust Fund account of the Phase One Participating Tribes for the **1972-92** Period, the documents describing or supporting the transactions that generated or disbursed the funds in those accounts, and the documents describing or supporting the Government's deposit, investment, and disbursement of those trust fund accounts. Among other things, Phase One, includes an examination of the assumptions used in the TRP engagement, the contract modifications thereto, and the issue papers that affected the scope of the work for the TRP.

c. DOl/OHTA agrees that it will provide to ITMA and Phase One Participating Tribes access to or copies of all documents and information reviewed, created, or otherwise used by Arthur Andersen in its TRP and, upon written request and within a reasonable period of time, all other documents which ITMA and Phase One Participating Tribes determine are necessary to fulfill the original scope of work provisions regarding such document requests). DOI/OHTA's commitment to provide these documents, however, does not obligate DOI/OHTA to provide access to or copies of those documents for which the DOI/OHTA or the Government has asserted a privilege or withheld as proprietary or confidential pursuant to Section ll.C.5. heroin. d. In undertaking Phase One, DOI/OHTA and ITMA intend to assist the Phase One Participating Tribes in their effort to develop a methodology to reconcile, as accurately as possible, their Tribal Trust Fund accounts for the 1972-92 Period. In addition, DOI/OHTA agrees to provide access to or copies of any additional documents and

information that ITMA and the Phase One Participating Tribes determine are necessary to develop a proposed methodology to reach agreed-upon balances in Tribal Trust Fund accounts for the 1972-92 Period. The parties understand that the word "methodology" as used herein may mean a single methodology with subparts that may not be applicable to all tribes, or multiple methodologies devised to address aspects of the overall Project. Phase One (and therefore presumably Phase Two) will be limited to the 1972-92 Period, but the parties may agree to consider other time periods at any point in the Project if doing so would promote the purposes of this Project. Of course, to the extent that the resulting methodology will not or does not address pre-1972 periods, any agreed-upon balance for the Period for any Tribal Trust Fund account cannot account for any inaccuracy in the beginning balances as of 1972 or any interest that would have been earned for the 1972-92 Period because of such inaccuracy.

e. The purpose of Phase Two of the Project is for the Phase Two Participating Tribes to apply the methodology developed in Phase One of the Project and reach an agreement with DOI/OHTA about the balances of the Tribal Trust Fund accounts of the Phase Two Participating Tribes for the 1972-92 Period. Phase Two Participating Tribes could, but are not required to be, the same Tribes as the Phase One Participating Tribes.

**2** The scope of Phase One of this Project shall initially be limited to the review and analysis of all documents created, developed, reviewed, and/or used by Arthur Andersen in its TRP, and all other documents which ITMA and the Phase One Participating Tribes determine are necessarily to develop a methodology to fulfill the original scope of work of the TRP (which was "to assure that Tribal Accounts are reconciled as accurately as possible back to the earliest date practicable," although the parties have agreed to limit the time period as agreed herein). The review and analysis will include documents describing transactions which generated such funds, and documents describing the Government's deposit, investment, and disbursement of those trust account funds.

After taking into account the relevant benefits and burdens, the parties agree that the methodology developed in Phase One may include, with respect to specific classes of tribes or resources, analysis of source documents (e.g. leases or other documentation supporting the sale of, for example, gravel or timber) to determine if the proper amounts were collected by DO1 on behalf of a tribe. The parties understand the burden that would be placed on DOI/OHTA if many such source documents were requested from DOI/OHTA and will attempt to focus any such requests in a manner that will not unreasonably endanger the ability of any party to

complete this Project. Further, the parties agree that the Project shall not include attempts to determine whether the agreements describing the transactions generating such funds provided "Fair Market Value" at the time of their execution or whether underlying trust resources (e.g., timber or natural gas reserves) were properly managed by the Government. The parties also expressly agree that the Government's investments of the trust funds shall be subject to review and analysis.

B. OBJECTIVES AND TASKS

1. Plan Development and Implementation-"PHASE ONE" OF PROJECT

For Phase One of the Project, ITMA will develop and implement a plan for involving representatives, staff, and experts of ITMA and five to seven Phase One Participating Tribes in activities culminating in an intensive week-long work session with DOI/OHTA representatives.

The goal of the work session is to develop a proposed methodology (or methodologies) designed to be applied in Phase Two that will allow the parties to account for transactions for the 1972-92 Period and therefore to reach agreed-upon balances in Tribal Trust Fund accounts administered by the DO1 during the 1972-92 Period.

ITMA's activities and deliverables under this Cooperative Agreement shall include the following:

a. Scheduling, advertising and hosting an informational session for all potential Participating Tribes to describe the process envisioned by this Project with the goal of enlisting the active and committed participation of at least five and no more than seven Phase One Participating Tribes in the process.

b. Securing the services of experts, including accounting, legal and other experts in the area of trust fund accounting and management, who would provide information and advice on trust accounting methodologies to Phase One Participating Tribes and ITMA prior to, during, and after the intensive week-long work session.

c. Scheduling and hosting a planning session with the appropriate number of representatives of Phase One Particjpating Tribes, including their staff and experts, and the ITMA, including its staff and experts, to:

**(1)** Determine and obtain the information they will require from DOI/OHTA and others in order to meaningfully participate in the intensive work session; and

**(2)** Set parameters for recommendations expected to be developed at the work session described below, including an analysis of the outstanding issues and options for addressing those issues, which will be proposed at the intensive work session.

d. Providing funding to assist Phase One Participating Tribes, including for their retention of independent experts to advise them, consistent with the approved ITMA Budget attached hereto as Appendix A.

e. In cooperation with DOI/OHTA representatives and Phase One Participating Tribes, developing the agenda for the intensive week-long work session contemplated herein, which shall include the following:

(1) Discussion of the Phase I Participating Tribes' Tribal Trust Fund account information provided previously by DOI/OHTA at the request of Phase One Participating Tribes or ITMA. This information shall include that contained in the TRP and supporting documents for the 1972-92 Period, and other information requested by Phase One Participating Tribes and their experts, or ITMA and its experts, relating to that time period that are held or maintained by, or otherwise accessible to, DOI/OHTA. DOIlOHTA will, in good faith, assist in working as necessary with other Government agencies and Arthur Andersen LLP to provide access to or copies of all information requested.

**(2)** Discussion of the ITMA and Phase One Participating Tribes' recommendations, which will include an analysis of the outstanding issues and options for addressing those issues.

**(3)** Development of a methodology designed to be applied in Phase Two that will allow the parties to account for transactions for the 1972-92 Period and therefore to reach agreed-upon balances in Phase Two Participating Tribes' Tribal Trust Fund accounts administered by the DO1 during the 1972-92 Period, based upon the Phase One Participating Tribes' examination and analysis of the TRP work and other documents from the 1972-92 Period, as described herein, which the participants deem necessary to develop this methodology.

f. Developing and disseminating to all Tribes (regardless of their participation in the Project) relevant information regarding the progress of Phase One of the Project, and produce a written report for Congress and all Tribes that details the methodologies resulting from Phase One.

**g.** Providing follow-up consultation to the DOIlOHTA on the most effective means of implementing Phase Two efforts, including but not limited to recruitment and selection of Phase Two Participating Tribes and funding for settlement of Tribal accounts whose balances are ultimately agreed upon by the Tribes and DOI/OHTA.

h. Assist in developing an educational effort to raise awareness of the results of the Phase One activities.

Jointly establishing with DOI/OHTA an Oversight Panel consisting of an equal number of ITM Tribal members and DOI/OHTA representatives that will address and attempt to resolve disputes and issues that arise during all phases of the Project, including privilege issues. The agreed-upon procedures governing the Oversight Panel will include the use of a third-party mediator, such as a Federal judge, to assist in resolving disputes. If a dispute remains unresolved after referral to the Oversight Panel, including mediation, DOI/OHTA or ITMA (as well as any Participating Tribe) may withdraw from the process without penalty or prejudice.

2 Plan Development and Implementation-"PHASE TWO OF PROJECT

For "Phase Two of the Project, ITMA will work with DOI/OHTA and the Phase Two Participating Tribes to apply the methodology that will have been developed in Phase One to the Tribal Trust Fund accounts of the Phase Two Participating Tribes. These Tribes and their experts, in conjunction with ITMA and its experts as needed, will apply the methodology developed in Phase One to attempt to reach agreed-upon balances. ITMA's activities and deliverables will include the following:

a. Determine a process for selecting Phase Two Participating Tribes. The number of Phase Two Participating Tribes selected will depend upon availability of funds.

b. Subcontract with appropriate accounting and legal experts to assist ITMA and Phase Two Participating Tribes in Phase Two. Phase Two Participating Tribes and their experts and ITMA and its experts will conduct this accounting work and submit the results to

DOI/OHTA for review, including quality control review; thereafter, the parties will attempt to reach agreement on the account balances.

c. Develop and disseminate to all Tribes (regardless of their participation in the Project) relevant information regarding the progress of Phase Two of the Project.

d. Perform other activities and deliverables to be determined through negotiations with DOI/OHTA, as may be reflected in a subsequent Phase Two Cooperative Agreement.

3. Conferring with DOI/OHTA

Through the course of the Project to be funded by this Cooperative Agreement any subsequent arrangements, ITMA shall maintain regular and routine communication with authorized representatives of DOI/OHTA regarding ITMA's progress in performing the activities described herein.

4. Timetable for ITMA and DOI/OHTA Performance: "PHASE ONE" AND "PHASE TWO"

ITMA will begin work immediately upon execution of this Cooperative Agreement by both parties, and insofar as is reasonably to meet the timetable described below. This timetable represents the good faith estimate of ITMA and DOI/OHTA of the amount of time required for ITMA's performance under this Cooperative Agreement. The parties warrant that, if necessary, the timetable may be reasonably modified to accommodate the schedules of the Participating Tribes or their experts, and any other circumstances that may result in unavoidable delays in the process herein described.

a. By no later than December 1, 2004, ITMA will host an informational meeting with all potential Participating Tribes to describe the processes relating to the Project.

b. By no later than January 15,2005, ITMA (with DOI/OHTA) will establish the Oversight Panel described herein.

c. By no later than February 28, 2005, ITMA will host a planning session with the representatives of ITMA and Participating Tribes, their staff and experts, to determine preliminarily and obtain the information they will require from DOI/OHTA and others in order to meaningfully participate in the intensive work session, and to set parameters for the kinds of recommendations expected to be developed at the work session. Requests for additional documents

and information may be made throughout the process, however, and it is anticipated that ITMA will submit all Phase One requests by August 1,2004.

d. By no later than May 15,2005, ITMA and its experts will hold at least one follow-up meeting with the Phase One Participating Tribes and their experts, during which strategies will be developed and vetted, with the objective of outlining any outstanding issues and the potential methodologies to be proposed at the intensive work session with DOI/OHTA.

e. By no later than June 30, 2005, ITMA will hold an intensive week-long work session for representatives and experts of ITMA, Participating Tribes and DOI/OHTA. The goal of this work session is to reach consensus on a methodology to be used in Phase Two. The parties may determine that an additional intensive session may be required to complete this task. If so, future proposed deadlines will be adjusted accordingly.

f. By no later than September 30, 2005, ITMA will produce a detailed description of the method or methodologies and report the results of the Project to all Tribes (regardless of their participation in the Project) and to Congress in order to raise awareness regarding the progress of the Project.

g. By no later than August 31,2005, ITMA will have developed and submitted a subsequent Cooperative Agreement application to seek a funding mechanism for the support of ITMA's FY 2006 Phase Two efforts described below. Should an application be approved and if funds are made available, the following activities are intended for Phase Two.

h. By approximately October 31, 2005, ITMA will begin facilitation of meetings among Tribal leaders, technical experts, and Government representatives to attempt to implement the proposed methodology developed in Phase One. If at all possible, ITMA, DOI/OHTA, and the Participating Tribes will reach agreement about the account - balances of the Tribes for other time periods prior to or subsequent to those dates.

Through May 1, 2006, ITMA will take all reasonable steps to facilitate agreement between DOI/OHTA and the Phase Two Participating Tribes about the balances of their Tribal Trust Fund accounts.
By no later than July 1, 2006, ITMA will develop a written education strategy for increasing Congressional awareness of the

outcomes of this Project. The strategy will also address the need to make available funding from the Judgment Fund to settle the balances of the Tribal Trust Fund accounts of the Phase Two Participating Tribes, in those instances in which DOIlOHTA and the Participating Tribes have applied the methodology derived in Phase One of the Project and have reached an agreement about the balances.

C. <u>OTHER PROVISIONS</u>

**1.** DOI/OHTA Responsibilities: DOI/OHTA will provide its full cooperation during the course of the Project so as to enable ITMA to achieve the goals of this Cooperative Agreement. DOI/OHTA's responsibilities will consist of the following:

a. Provide to ITMA, its agents and Participating Tribes access to and, at ITMA's written request, copies of all books, records, electronic data, reviews, audits, agreed-upon procedures reports, issue papers and work papers related to the performance of this Cooperative Agreement. Any delay on the part of DOI/OHTA or other Government agency in providing access to or producing copies of documents or data to ITMA, the Participating Tribes, or their experts that results in a delay of the work in the Project may require adjustment(s) to the schedule, deadlines, and ITMA Budget set forth herein (upon written approval thereof and subject to the availability of funds). In these instances, ITMA will not be held responsible for any consequential failure to meet other deadlines set for therein.

b. DOI/OHTA's commitment to provide the necessary information and documentation, however, does not obligate DOIlOHTA to provide those documents for which DOI/OHTA or the Government has asserted a privilege pursuant to Section II.C.5, below.

c. To issue, regularly (at least every six months) and in writing, a joint report by ITMA and DOI/OHTA to the Department of Justice (DOJ) regarding the progress of this Project. No such reports will be submitted to the DOJ, however, unless and until the contents are agreed upon by the parties. DOI/OHTA may have reason to confer with DOJ at other times and may do so, but the parties recognize that this Project has been negotiated primarily between DOIlOHTA and lTMA and believe that a streamlined approach will provide the greatest chance of success.

d. Provide timely payments to ITMA of amounts that have been approved by DOI/OHTA in accordance with ITMA's Budget

(Appendix A) and Appendices B & C.

**2.** Effective Date: This Cooperative Agreement shall be effective until the execution of the Cooperative Agreement by all signatories. The parties agree' that they intend to extend the term of the Project through a subsequent Cooperative Agreement as negotiated and approved.

**3.** Assignment, Delegation, Subcontracting: ITMA may subcontract any part of the work that is required to perform the activities described herein.

**4.** Participating Tribes Not Parties to Cooperative Agreement: The Phase One and Phase Two Participating Tribes are not parties to this cooperative Agreement, and, accordingly, they are not liable for ITMA's performance under this Cooperative Agreement.

**5.** Privilege and Confidentiality Protections: ITMA and DOI/OHTA recognize that, in the course of conducting the Project, ITMA, the Participating Tribes, and their experts may seek access to, or request copies of, documents and data relating to the TRP that may contain privileged or confidential information. ITMA and DOI/OHTA will undertake the following processes, in good faith, with respect to the determination and protection of any privileged or confidential information.

a. After ITMA, the Participating Tribes, or their experts have specified the documents or data to which they seek access or copies, DO1 (or the appropriate Government agency having the documents or data) will conduct a timely review of the requested documents or data to determine whether the documents or data are subject to protection under applicable privileges and/or Federal law. In the event that DO1 (or the appropriate Government agency) determines that the requested documents or data contain information that is privileged, confidential, proprietary, and/or otherwise restricted from disclosure by Federal law ("Restricted Information"), DO1 (or the appropriate Government agency) will withhold the Restricted Information and provide, in a timely manner, to ITMA, the Participating Tribes, or their experts, with the non-restricted information and a list describing, in appropriate detail, the withheld Restricted lnformation and the basis for withholding such information.

DO1 may provide to ITMA, the Participating Tribes, or their experts, the Restricted Information only if appropriate protections or measures are obtained, such as through releases or waivers from concerned parties and/or through confidentiality and non-disclosure agreements. If necessary, DO1 (or the appropriate Government agency) will discuss with ITMA, the participating

Tribes, or their experts, the basis or bases for any assertions of disclosure restrictions and seek resolution of any disputes regarding the assertion(s), or refer such assertions as cannot be agreed upon to the Oversight Panel. ITMA states its concern that broad assertions of privilege by the Government could adversely affect its ability to fulfill the purposes of the Project.

b. If ITMA inadvertently receives documents or data that it knows or reasonably knows to contain Restricted Information, ITMA shall immediately notify the Program Manager.

**6.** Record Access, Procedures, and Scope: All requests for access to or copies of records shall be made in writing, addressed to the Program Manager. The Program Manager will coordinate with the appropriate record custodians for access to or production of the requested information, track the status of requests, and respond to ITMA as soon as practicable, but no later than 30 days after the request is received; if the requested information has not been located or is not available, the Program Manager will advise ITMA of the procedures undertaken and update ITMA on the progress of locating the requested information.

a. Access to all documents shall be subject to the various rules, policies, and procedures for record access, security clearances, and research applicable to each record facility (which may include supervision by DOI/OHTA or other record custodians, such as personnel of the National Archives and Records Administration) in order to ensure the integrity of all documents and document collections.

b. To receive access to documents, ITMA, Participating Tribes and their experts and consultants shall **(1)** sign and acknowledge the rules, policies, and procedures applicable to each record facility, including, without limit, the Research Agreement of the Office of Trust Records attached hereto as Appendix D, and shall (2) not remove any original records from any record storage facility or repository; ITMA shall only receive copies of documents, as appropriate and when permissible.

c. The parties intend and agree that the Project shall neither relate to nor shall involve any of the individual Indian money (IIM) accounts and records that are subject to the Cobeil v. Norton litigation pending in Federal District Court for the District of Columbia (No. 96CV1285).

**7.** Work Product and Reports: Any final work product of or final reports generated by DOI/OHTA or ITMA as part of the Project (regardless of

form or format) will be deemed equally the property of the DOI/OHTA and ITMA, and shall timely be made available to each party by the other, except for legal or other expert advice (which may be disclosed only at the discretion of the holding party),

8. No Waiver: The failure of either ITMA or DOI/OHTA to insist on the performance of any of the terms and conditions of this Agreement. or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions. The terms and conditions shall continue and remain in full force and effect as if no forbearance or waiver had occurred.

**9.** Payments: ITMA will present detailed requests for payments in accordance with the ITMA Budget (Appendix A) and according to the payment provisions described in Appendix B and Appendix C, which recognize the need for, and authorize, advance payments to ITMA for its activities under this Cooperative Agreement as set forth therein.

10. Use of Consultants: ITMA may provide funds to consultants, including attorneys at law, for activities referred to in the "Objectives and Tasks" described in Section 11.6, above, and for compliance with the administrative requirements of this Cooperative Agreement, such as the financial reporting provisions described in Paragraph ll.C.12 below and the ITMA Budget attached hereto as Appendix A.

11. Travel: All official travel by ITMA, including ITMA Board members, staff, consultants or individuals, as deemed necessary by the Executive Director or the Chairperson of ITMA, and official travel by Participating Tribes' representatives, and experts shall be at standard coach fares or less, and included as appropriate by annual audit of ITMA's travel records by a qualified and independent certified public accountant pursuant to Paragraph ll.C.13 below. ITMA may use Government airfare rates through DOIlOHTA to the fullest extent that may be allowed by law or policy. ITMA travel policies must be consistent with current Government travel regulations, as published in the Federal Register.

12. Financial Cost Reporting: ITMA will expend the Government appropriated funds advanced to it exclusively to fulfill its obligations and responsibilities under this Cooperative Agreement. ITMA will provide to the Financial Assistance Officer quarterly reports via SF 270, or as otherwise agreed in writing, within 30 calendar days after the end of each calendar quarter, noting each specific cost incurred for specific tasks accomplished during the reporting period. ITMA will submit an annual financial report via SF 270, or as otherwise agreed in writing, within 90 days after the expiration or termination of this Cooperative Agreement. ITMA may carry over funds to the next fiscal year as necessary for

completion of the Phase I activities described in Section 1I.B above.

13. Annual Audit: ITMA shall make all provisions to ensure an annual, independent audit is conducted on all aspects of program administration and function compliance. Such audit shall be in accordance with OM6 Circular A-133 as appropriate. Audits will meet the standards in OMB Circulars A-i 10, A-122, and A-133. The cost for an annual audit is an allowable cost that will be paid for by the Government as is listed as an itemized expense on the ITMA Budget attached hereto as Appendix A.

14. Cancellation/Suspension: Either DOI/OHTA or ITMA may terminate this Cooperative Agreement upon written notification through the Financial Assistance Officer with 30 days advance notice. In the event the Cooperative Agreement is terminated, funds allocated or advanced for tasks not yet performed shall revert to DOI/OHTA. Tasks which have been performed prior to notice of termination shall be paid out of funds advanced under this Cooperative Agreement. With the exception of activities necessary to terminate the Cooperative Agreement or to preserve information developed hereunder (based on the written agreement of DOIlOHTA and ITMA), no activities will occur once the parties have received notice of termination.

D. TECHNICAL QUALIFICATIONS REQUIREMENTS

The fulfillment of this Cooperative Agreement will be accomplished by sources of expertise required by Section 1I.B and Paragraph ll.E.3.

E. PROGRESS REPORT DELIVERABLES

In addition to the other ITMA activities and deliverables in this document, ITMA also shall comply with the following:

1. Within the first 30 days of the approval of this Cooperative Agreement Application, ITMA will provide the Program Manager and the Financial Assistance Officer with a list of the officers and all member Tribes of ITMA.

2. No less frequently than with each quarterly report, ITMA will provide the Program Manager with a list of all attendees or Tribes represented at each meeting convened pursuant to Section 1I.B.

3. No less frequently than with each quarterly report, ITMA will provide the Program Manager and the Financial Assistance Officer with a listing and the qualifications of all firms and individuals which ITMA plans to utilize as sources of expertise to carry out the activities described in Section Il.B. above. Certified Public Accountants shall meet the independence,

professional judgment, competence, and other requirements specified in Chapter of 3 the Government Accountability Office's Government Auditing Standards" (2003 Revision), as may be amended from time to time.

**4.** ITMA will provide all reports required under this Cooperative Agreement.

**5.** ITMA will provide an annual, written-narrative progress report to the Program Manager and the Financial Assistance Officer no later than 90 days after the close of the fiscal year.

a. A narrative description of the work accomplished pursuant to Section II.B above.

b. A narrative description of any activities or tasks set forth in Section Il.B. above, that was not accomplished, together with a detailed statement of reasons why such objectives or tasks were not accomplished.

c. A summary of any problems, delays or adverse conditions encountered in carrying out the purpose of this Cooperative Agreement.

**6.** ITMA will provide prompt written notice to the Program Manager and Financial Assistance Officer of any problems, delays, or adverse conditions encountered in carrying out the purpose of this Cooperative Agreement, including written notice of any delay that, if not cured, may require adjustment to the scheduled dates.

F. PERIOD OF PERFORMANCE TERMS OF COOPERATIVE AGREEMENT

The period of performance begins upon the execution of the Cooperative Agreement by both parties as evidenced by execution by all signatories, including the period encompassed by the authorization of pre-award costs, and ends **on** September 30, 2005. The Period governing this Cooperative Agreement is based upon the Federal Government's Fiscal Year (October 1 through September 30). ITMA and DOI/OHTA recognize, however, that the overall Project contemplated cannot be completed by September 30, 2005, and therefore, ITMA intends to apply for a subsequent Cooperative Agreement (or subsequent Grants) to assure the completion of the Project, and if approved, is subject to the availability of funds. Phase Two is dependent on successful completion of Phase One and will be further described in a subsequent Cooperative Agreement.

G. FUNDING COOPERATIVE AGREEMENT

OHTA will make available up to $549,440.22 to ITMA to cover Phase One

deliverables and expenses for travel, printing, research, monitoring activities, tribal and other experts, Tribal outreach, electronic communication, distribution of materials and reports, and meetings, etc., as described on the approved ITMA Budget attached hereto as Appendix A. Additional funds through subsequent Cooperative Agreement(s) for the purpose of completing Phase Two shall be the subject of additional discussions between DOI/OHTA and ITMA, shall be the subject of a modification to this Cooperative Agreement(s) or through subsequent Cooperative Agreements and shall be subject to the availability of funds.

H. PRE-AWARD COSTS

DOI/OHTA has provided the sum of $100,000 to reimburse ITMA for appropriate, documented pre-award costs under an FY 2004 existing grant from the Office of the Special Trustee for American Indians. Any amounts not required for pre-award costs shall be used by ITMA for Phase One. The funds awarded under this Cooperative Agreement may be used for Phase One activities incurred between November I, 2004 and the effective date hereof. The Financial Assistance Officer reserves the right to negotiate additional pre-award costs on a case-by-case basis, as long as they are allocable and reasonable. Pre-award costs exceeding $100,000 will be incurred at ITMA's risk and be subject to negotiation of an acceptable written agreement. Any funding authorized under a preaward agreement will be considered as part of the total funding agreement and recorded as such to the approved budget.

I. DISPUTES

The Financial Assistance Officer is the final decision-maker on any administrative dispute between ITMA and DOIlOHTA under this Cooperative Agreement. However, the parties expressly acknowledge, that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal Trust Fund accounts and that the Financial Assistance Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e. resolution of trust fund accounting and privilege issues by the oversight panel contemplated in Paragraph 11.B.l.i). The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this agreement.

J. ATTACHMENTS/APPENDICES

The following documents are attached hereto and incorporated by reference as though fully set forth:

Appendix A, ITMA Budget
Appendix B, Special Terms and Conditions
Appendix C, Payments
Appendix D, Research Agreement of the Office of Trust Records

K. NOTICE

Any notice under this agreement shall be in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested or by facsimile. All notices shall be addressed to the parties at the following addresses or at such other addresses as the parties may from time to time direct in writing:

For ITMA
Name: Mary Zuni, Executive Director
Address: 2800 San Mateo Blvd., Suite 105
Albuquerque, NM 871 10
Phone: 505-247-1 447
Fax: 505-247-1 449
E-mail: mary@itmatrustfunds.org

For OHTA
Name: John H. McClanahan
Tribal Trust Accounting Program Manager
Office of Historical Trust Accounting
U.S. Department of the lnterior
Address: 1801 Pennsylvania Ave., NW, Suite 500
Washington, D.C. 20006
Phone: 202-327-5300
Fax: 202-327-5375
E-mail: John_McClanahan@ios.doi.gov

For NBC
Name: Lincoln S. Capstick Ill
Financial Assistance Officer
National Business Center
U.S. Department of the Interior
Address: 7301 W. Mansfield Ave. D-2940
Denver, CO 80235
Phone: 303-969-5032
Fax: 303-969-5468
E-mail: Lincoln_S_Capstick@nbc.gov

with a copy to: OHTA, as above

Any notice shall be deemed to have been given on the earlier of (a) actual delivery or refusal to accept delivery. (b) the date of mailing by certified mail, or (c) the day facsimile delivery is verified.

**ACCEPTANCE**

The foregoing Cooperative Agreement between the Intertribal Monitoring Association on Indian Trust Funds and the U.S. Department of the lnterior/Office of Historical Trust Accounting through the National Business Center is accepted as evidenced by the signatures below.

ITMA: INTERTRIBAL MONITORING ASSOCIATION
ON INDIAN TRUST FUNDS

__________________________________ ________________________

Executive Director Date

NBC: NATIONAL BUSINESS CENTER

___________________________________ _________________________

Financial Assistance Officer Date

DOI/OHTA: OFFICE OF HISTORICAL TRUST FUND ACCOUNTING

___________________________________ _________________________

Executive Director Date